# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7244 | **DATE** | 3/5/2004 |
| **CASE TITLE** | Law Offices of Tent & Butcher vs. John Buscher | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, judgment is entered affirming the decision of the Bankruptcy Judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | /10 |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

| | |
|---|---|
| LAW OFFICES OF TRENT & BUTCHER, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>JOHN J. BUSCHER, )<br>)<br>Appellee. ) | Case No. 03 C 7244 MAR 1 7 2004 |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Appellant, the Law Offices of Trent & Butcher ("Trent"), appeals from a bankruptcy judge's July 25, 2003 oral ruling finding the legal fees owed by appellee John Buscher to Trent were a dischargeable debt. Trent argues that under 11 U.S.C. § 523(a)(2)(A), Buscher's debt cannot be discharged because he fraudulently induced Trent to continue representing him. For the reasons stated below, we affirm the bankruptcy judge's decision.

## Background

Buscher retained Douglas Trent in January 1998 to represent him in divorce proceedings. July 25, 2003 tr. at 4-5. Buscher entered into a written fee agreement and paid Trent about $3000 as a retainer. *Id.* at 6. Buscher testified that he borrowed the $3000 from his father to pay Trent, *Id.*; Trent testified that Buscher used a distribution from his Ameritech Savings and Security Plan to pay the retainer and said he would make future payments from this same source. *Id.* at 53. The Ameritech Savings and Security Plan was an ERISA-protected 401(k) account, from which

1

/0

Buscher could take general disbursements, loans and hardship withdrawals.[1]

The custody dispute proved contentious and lengthy, and Buscher continued making payments to Trent through May 2001, although a large carryover balance accrued. *Id.* at 55. Then Buscher stopped making payments. Trent testified that Buscher brought him the statements from his 401(k) plan as evidence that he could pay for Trent's services, and Trent continued to represent him. *Id.* at 56. On November 15, 2000, Buscher had signed an affidavit stating that he wanted to have "any proceeds [he] may receive, upon entry of a Judgment for Dissolution of Marriage, from the distribution of my 401(k) account through my employment with Ameritech be turned over to my attorney, Douglas P. Trent, Law Offices of Trent & Butcher as payment toward attorney's fees and costs owed in this matter." Buscher Aff. (dated Nov. 15, 2000) ¶ 3. On November 6, 2001, a state court finalized Buscher's divorce and entered a consent judgment ordering Buscher to pay Trent $22,590.50 in attorney's fees and to "execute any and all documents necessary to transfer and assign the proceeds of his Ameritech 401(k) Plan to Douglas P. Trent of The Law Offices of Trent & Butcher for payment of the attorney's fees outlined herein." Consent Judgment Order (dated Nov. 6, 2001) ¶¶ 1, 3. The plan administrator was ordered to "immediately transfer and assign to Douglas P. Trent of The Law Offices of Trent & Butcher the amount of $22,590.50 to satisfy the judgment herein." *Id.* ¶ 2.

Trent testified that the day the Consent Judgment Order was entered, Buscher gave him

---

[1] Appellant states in his reply brief that "there is nothing in the record to suggest that it was a 401(k) Plan." Reply at 1. This claim is disingenuous. During Trent's testimony before the bankruptcy judge, Trent's lawyer called the Ameritech Savings and Security Plan a 401(k) plan. *See, e.g.,* July 25, 2003 tr. at 61. But more importantly, the record includes a letter from Ameritech to Trent dated April 8, 2002, which specifically states that the plan in question was a 401(k) ERISA-protected account and the Marital Settlement Agreement between Buscher and his ex-wife prepared by Trent refers to the account as a "401(k) retirement plan."

2

the PIN number to access the account, but when Trent tried to use it, he was told by the plan administrator than the number had been changed. July 25, 2003 tr. at 58-59. Buscher testified that he did not recall giving Trent his PIN number. *Id.* at 22-23. He conceded that he had not made efforts in writing to transfer the 401(k) plan to Trent. *Id.* at 23. However, Buscher testified that he did call his plan administrator on March 28, 2002, seeking to make a hardship withdrawal from his account to pay Trent, but the plan administrator told him that he did not qualify for a hardship withdrawal – that a hardship withdrawal was only available to pay for funeral expenses, medical expenses or tuition, or to purchase a new home or prevent a foreclosure. *Id.* at 37-38. Had he qualified for a hardship withdrawal, he would have had access to almost $20,000. Buscher estimated that he made five or six calls to the plan administrator seeking hardship funds from his account to pay Trent, and he testified that at least once, Trent was on the phone with him when he made the request. *Id.* at 40. Buscher explained that he could not take out a loan from the plan to pay Trent because he had two loans from the account outstanding and he was allowed only two concurrent loans at a time. *Id.* at 38-39.

Upon receipt of the Consent Judgment Order, the Qualified Domestic Relations Order ("QDRO") processing group for the Ameritech plan wrote the law firm, explaining that "any instrument which is submitted purporting to be a domestic relations order must be reviewed to determine if it is a Qualified Domestic Relations Order, as defined in Section 414(p) of the Internal Revenue Code of 1986, as amended, and Section 206(d) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended." SBC Letter (dated Jan. 31, 2002). In the meantime, Trent asked a state court to enjoin Buscher and the Plan from withdrawing any funds from Buscher's account. On March 22, 2002, the Plan informed Trent by letter that the Consent

3

Judgment Order was invalid because under the antialienation provisions of ERISA, 29 U.S.C. § 1056(d)(1), Buscher could not assign or transfer his 401(k) funds to Trent. SBC Letter (dated April 8, 2002). In an April 8, 2002 letter to Trent, the Plan explained that the only applicable exception to the antialienation provisions is if the assignment is specified in a QDRO, 29 U.S.C. § 1056(d)(3), and the Consent Judgment Order did not qualify as a QDRO under ERISA. *Id.* The plan requested that Trent "dismiss [his] petitions for injunctive relief and rule to show cause." *Id.* However, an Illinois circuit court judge issued a rule to show cause against Buscher on July 22, 2002 for his refusal to execute the documents necessary for the transfer to Trent. Order (dated July 22, 2002). The circuit court set the matter for hearing on September 11, 2002. *Id.* Buscher filed a bankruptcy petition on September 10, 2002, and Trent filed an adversary complaint against Buscher in the bankruptcy court.

Buscher testified at trial that he did not learn that his 401(k) plan could not be transferred or assigned to Trent until he met with his bankruptcy attorney in September 2002.[2] July 25, 2003 tr. at 42-43. He testified that he intended to assign the account to Trent. *Id.* at 43. But he admitted that even though he had about $3000 available for a general distribution, he never withdrew the money to pay Trent. *Id.* at 47. After hearing Buscher and Trent's testimony and considering the documents in the record, which are summarized above, the bankruptcy judge concluded that neither 11 U.S.C. § 523(a)(2)(A) or (a)(2)(B) prevented discharge of the debt

---

[2] The Court notes that this may be why the state court sanctioned Buscher for not complying with an agreement that violated federal law – that is, no one may have informed the circuit court that the 401(k) account could not be assigned or transferred to Trent. Once the plan put Trent on notice that ERISA prohibited the transfer of Buscher's 401(k) account to Trent, Trent should have at the very least informed the state court, if the plan had not already done so, that the plan claimed the account could not be transferred.

4

Buscher owed his former lawyer. *Id.* at 95, 102. Trent challenges only the bankruptcy judge's determination that § 523(a)(2)(A) did not apply.

## Analysis

The Court reviews the bankruptcy judge's conclusions of law *de novo* but reviews his factual findings for clear error. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995); *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1990) (citing Fed. R. Bankr. P. 8013). "The clearly erroneous standard . . . does not permit a trier of fact to be overturned 'simply because [the appellate court] is convinced it would have decided the case differently.'" *In re Bonnett*, 895 F.2d at 1157 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Rather, if "two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous." *Id.* (citing *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988)).

The bankruptcy judge accurately stated the law pertaining to the § 523(a)(2)(A) exception to the discharge of debts:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

11 U.S.C. § 523(a)(2)(A). "In order to prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence." *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)). Furthermore, "exceptions to discharge of a debt are construed strictly against a creditor and liberally in the debtor's favor." *In re Reines*, 142 F.3d 970, 972-73 (7th Cir. 1998) (citing *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)).

5

But despite this narrow construction, the Seventh Circuit has noted the "'vital functions'" served by this exception. *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (quoting *In re Mayer*, 51 F.3d 670, 674 (7th Cir. 1995)). The Seventh Circuit has said, "'Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment.'" *Id.* (quoting *In re Mayer*, 51 F.3d at 674).

Appellant argues that Buscher's debt to his divorce attorney should not be discharged because after Buscher stopped making payments in May 2001, he engaged in fraud to convince Trent to continue representing him. The bankruptcy judge recognized that although "[t]he most common type of fraud involves a deliberate misrepresentation or, what amounts to the same thing, a deliberately misleading omission," the Seventh Circuit has stated "section 523(a)(2)(A) is not limited to 'fraudulent misrepresentation.'" *Id.* at 892-93. In *McClellan* the Seventh Circuit said actual fraud involves "'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" *Id.* at 893 (quoting 4 Collier on Bankruptcy ¶ 523.08[1][e], p. 523-45 (15th ed., Lawrence P. King ed., 2000)). "[R]eliance is relevant only when a fraud takes the form of a misrepresentation." *Id.*

Despite this broad definition of actual fraud, the debtor must have intended to defraud the creditor in order for the debt to fall within the § 523(a)(2)(A) exception to dischargeability. *Id.* at 894 (explaining that actual fraud – as opposed to constructive fraud – requires intent and "[t]he fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones"). After hearing the testimony of Buscher and Trent and considering several exhibits, the bankruptcy judge concluded that Trent had failed to show by a preponderance of the evidence that Buscher had intended to defraud his attorney. This finding of fact was not clearly

6

erroneous.

Appellant argues that given the facts, "no reasonable person could agree with the decision of the [bankruptcy judge] that no fraud had occurred." Appellant's brief at 7. Specifically, appellant argues that Buscher committed fraud by agreeing to assign or transfer his interest in the 401(k) plan to induce Trent to continue representing him while never taking steps to make the transfer. *Id.* at 6. Appellant further argues that Buscher "without question" intended to defraud Trent because Buscher made no effort to transfer funds to Trent and changed his PIN number after giving it to Trent. *Id.* at 6. We conclude that a reasonable person could find, as the bankruptcy judge did, that this evidence is not enough to prove by a preponderance that Buscher intended to defraud Trent.

The bankruptcy judge recognized that the strongest evidence of intent to deceive was Trent's testimony that Buscher had given him his PIN number and changed it before Trent could access the account. July 25, 2003 tr. at 98. But the bankruptcy judge said he was not "convinced by a preponderance of the evidence that that was Mr. Buscher's intent to defraud Mr. Trent and his colleagues at the plaintiff law firm." *Id.* at 98-99. He had "no reason to disbelieve [Buscher's] testimony that he believed that he had the ability to make the assignment of his interest, whatever remained in the 401(k) account, at that point in time; that he did not follow up in obtaining documents to obtain what may have been the approximate $3000 available balance for nonhardship withdrawals, or whatever the function or equivalent of that was at the time. It is not at all clear." *Id.* at 100. Furthermore, the bankruptcy judge said it was undisputed that the plan was an ERISA qualified account that could not be assigned to Trent. *Id.* at 100.

The bankruptcy judge's conclusion that Buscher did not intend to defraud Trent was

7

based on his determination that Buscher had testified credibly. We must pay "special deference" to the credibility determinations made by the bankruptcy judge because "'only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief of what is said.'" *In re Bonnett*, 895 F.2d at 1157 (citing *Anderson*, 470 U.S. at 575). We find no reason to second-guess the bankruptcy judge's judgment. Buscher's decision to change his PIN number after giving it to Trent does not necessarily mean he did not intend to assign his account to Trent – it may mean only that Buscher had second thoughts about the appropriate procedure for making the transfer. The record makes clear that Trent sent the Consent Judgment Order directly to the Plan administrator. Buscher may have thought his participation was no longer necessary to make the transfer.[3] Similarly, the fact that he did not withdraw the $3000 available for general disbursement – when he owed Trent more than $22,000 – does not necessarily mean he did not intend to pay off his debt. He may have thought assignment of the entire account was the only payment that would be accepted because that was what Trent sought.

Furthermore, there is no reason to believe that Buscher promised to assign the plan to Trent knowing that such a transfer was a legal impossibility. As Buscher's lawyer, Trent was in a better position that Buscher to determine whether an attempt to assign or transfer the account would be invalid. We have no doubt that Trent provided important and competent legal services to Buscher, but he sought payment in a manner prohibited by federal law and, therefore, was

---

[3] Given the state court order that Buscher had to do what was necessary to make the transfer, his lack of participation is troubling. However, Buscher's reluctance to help – short of affirmatively blocking the transfer – does not prove he did not intend to assign the account to Trent.

8

unable to collect his fees. Given this situation, a reasonable person could conclude that fraud was not the cause of the unpaid debt. The bankruptcy judge's conclusion that Trent had not proven by a preponderance of the evidence that Buscher intended to defraud him is not clearly erroneous.

## Conclusion

For the reasons stated above, the Clerk is directed to enter judgment affirming the decision of the Bankruptcy Judge.

                                                                        MATTHEW F. KENNELLY
                                                                       United States District Judge

Date: March 5, 2004